LEULA M. WHITE, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 33130.) ERNEST L. WHITE, Individually and as Administrator of the Estate of MARLENE V. WHITE, Deceased, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 33129.) — Appeal by claimants from judgments in favor of the State in an automobile negligence action. On the night of January 23, 1955 Leula White and her deceased sister, Marlene — hereafter referred to as the claimants — were riding in a 1941 Buick sedan driven by Donald Pisaczyk and accompanied by four other passengers. All of the members of the party had been together since early evening visiting various grills but there was no evidence of intoxication as to anyone. They left Schenectady and drove out Route 159 — referred to in the record as the Mariaville Road — passed en route the scene of the eventual accident, stopped at a grill where they spent some time and were returning to Schenectady shortly after midnight when in proceeding down a long curvy hill the automobile, in making a turn, left the highway on the right side thereof, travelled some distance and was completely wrecked. The temperature was below freezing level. It had snowed earlier in the evening and the road was slippery. Testimony produced by the State showed that the road had been plowed and sanded earlier in the day. There was evidence that at this particular location — the road ran east and west — an intercepting road from the north at a higher elevation caused water to run across Route 159 and that the condition had existed for a long time; that it was known it would freeze at low temperature and there had been several prior accidents allegedly due to this condition, of which the State had notice. The court made many findings, two of which should be noted: "That there is a slight bank in the highway rounding the curve in the area south and east of power company pole No. 160 and in times of thaw, water flowed from the north side to the south side of the highway and on very cold nights the flowing water would freeze across the highway in said area. ⸰ ⸰ ⸰ That the icy and slippery condition of Route No. 159 was the result of general atmospheric changes." The court also found there was not sufficient lapse of time on this particular occasion to give the State notice of the condition and that neither the State nor the claimants were negligent. We feel that there was a basis for the court's finding in favor of the State and that it was not of necessity against the weight of the evidence. If the testimony showed that there was a spot of ice on an otherwise comparatively clear highway, then there would be no doubt as to the claimants' right to recover. However, the proof developed here justified the court in finding the highway *generally* was icy and slippery. The court had for its consideration the testimony of the driver who said the road "was fairly good, sir"; that it had been snowing and the further factor that he had travelled this same road just a short time earlier. Another witness for the claimants said that it started snowing as they left to return to Schenectady and the road was "somewhat slippery". Two police officers testified on their behalf, one of whom said that they travelled to the scene of the accident on Route 159 approximately five miles and the road was "very slippery that night, sir". The other police officer said the road surface was the same all the way out and that they could not drive over 30 miles an hour. "It was especially slippery the whole distance out to the scene." Where it is claimed that an accident results from ice caused by water flowing and freezing on a road due to a defective condition; and at the time of the accident the highway generally is shown to be slippery due to ice or snow from precipitation, the burden rests upon the complaining party to show that the accident was at least in part due to ice formed from the water coming from the defective condition. To show merely that the road at that point was slippery does not meet the requirements of the case if the highway generally was slippery. In this case there is no proof either that ice produced by the flow

was on the road immediately before the precipitation; or that in some distinguishable and identified form such ice existed during or after the precipitation. Neither is it shown that there was a definite flow of water from the side road in a melting period the day before the accident which could have frozen to produce ice on that night. There was some general proof in this direction offered by claimants, but it is so indefinite on what is a crucial point in the case that the court was not bound to accept it as sufficiently attributing the accident to the flow of water from the side. The testimony by G. K. Kingsley, who lived at the site of accident, was that he had often observed water flowing from the Coplon road entrance onto the State highway. The testimony is: " Q. Now, do you recall this accident on January 23, 1955 in the morning? A. Yes. Q. And do you recall the condition of that highway on the 22nd? A. Yes. There was water. Q. Describe the condition of it. A. Well, water runs by there down through there the same as it always has; and, as far as I know, there has been no change made. * * * Q. Did you observe the road at night time on January 22, 1955? A. You could tell there was ice there at night, yes; everybody was there and seen it. Q. For how long an area would this ice cover in front of your house on the 22nd day of January? A. Well, that, I should say about four or five foot there where it ran across. Q. And did it run all the way across the road? A. All the way across." What his observation that "there was water" means is not demonstrated and the rest of the answer could be a generalized narrative of prior conditions. The expression "as far as I know" suggests either a hypothetical analysis or a summary and not a physical description of what he saw, what "this ice cover" meant "on the 22nd day of January" is even more indefinite; and it is not possible to tell on this record whether the witness was referring to the ice on the night of the accident; or when on January 22 he was talking about ice and when about water. A condition caused by alternate flowing and freezing may change from time to time as temperature changes; and if a specific result is charged to such a flow followed by freezing, it is necessary to show that it actually occurred at a relevant time. The generally slippery condition of the road, for example, could exist on the night of the accident due to direct precipitation, although there had been no melting and flowing from the side road for many days before. Where, as here, it is established that the whole road was very slippery at the time of the accident, the burden is on claimants to show that the skidding was due to the conditions complained of and not to general slipperiness of the road. The record permitted a finding by the Court of Claims that the skidding of the car was due to the general slipperiness of the road and that it had not been satisfactorily attributed by claimants to the flow and freezing of water on which claimants relied. From this testimony the court could properly deduce that while the spot where the accident happened was dangerous on that particular night, there was no showing that the condition there was sufficiently different from the general existing road conditions on Route 159. This was a lighted and well-illuminated highway. There was no evidence — that on this night — that a sign would have warned or cautioned of an unusual danger. The hill, which the automobile was descending was long, full of curves, icy and slippery on this night. We find and determine that although the State had knowledge of the dangerous condition the condition was not the actual, proximate, contributing or concurrent cause of this accident but rather it was due to the general icy and slippery road conditions. Many exhibits — particularly photographs of the scene — were in evidence and upon which the lower court relied in part in making its decision. These have all been examined, together with the various markings thereon, and we find that they do not constitute sufficient grounds for reversal. Both parties

to the controversy have cited many cases in support of their respective contentions. The case nearest in point would appear to be *Bruce* v. *State of New York* (1 Misc 2d 104, affd. 3 A D 2d 793) but from reading the decision therein it would appear that there was not a general icy and hazardous road condition but just the one section of the pavement where the accident happened and which was caused by water running across the road and on occasions freezing, all of which the State had notice. Judgments unanimously affirmed, without costs. Present — Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ.